U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

ENTERED
TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET



**The following constitutes the ruling of the court and has the force and effect therein described.**

Signed March 9, 2007             **United States Bankruptcy Judge**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| EMANUEL JARRELL, | § | CASE NO. 06-10409-RLJ-7 |
| | § | |
| DEBTOR | § | |

### MEMORANDUM OPINION

The Court considers whether to dismiss Emanuel Jarrell's chapter 7 case because he failed to obtain pre-filing credit counseling, or, alternatively, because his filing allegedly constitutes an abuse of the Bankruptcy Code under section 707(b) of the Bankruptcy Code. Dismissal under section 707(b) was raised by the motion of Huntington National Bank. Hearing was held on January 8, 2007.

The Court has jurisdiction over this matter under 28 U.S.C. § 1334(b); this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). This Memorandum Opinion contains the Court's findings of fact and conclusions of law. Bankruptcy Rule 7052.

**Facts**

1. Jarrell, acting *pro se*, filed this bankruptcy case under chapter 7 of the Bankruptcy Code on November 16, 2006. Upon the filing, Jarrell also filed his application requesting a waiver of the filing fee. The application recited he had a monthly income of $525. By its order of November 29, 2006, the Court granted the application and waived the filing fee.

2. Jarrell did not obtain the required credit counseling ( or "briefing") prior to filing, but did request an exemption from the credit counseling. He certified that he was unable to complete the credit counseling, contending both an "incapacity" and a "disability" as those terms are defined by 11 U.S.C. § 109(h)(4).[1]

3. Though Jarrell filed this chapter 7 case *pro se*, he did retain counsel, Dick Harris, on or about December 1, 2006. Harris assisted Jarrell in completing his Schedules and Statement of Financial Affairs. Jarrell appeared with Harris at the section 341 creditors' meeting held December 20, 2006.

4. Jarrell has filed at least ten prior bankruptcy cases, all of which were filed in the Middle District of Florida, and all of which were ultimately dismissed. One case was dismissed with prejudice to refiling for one hundred eighty days. He and his wife have also filed or have been involved in over one hundred separate lawsuits in the state of Florida.

---

[1]Subsection (h)(4) of section 109 states as follows:

For the purposes of this paragraph, incapacity means that the debtor is impaired by reason of mental illness or mental deficiency so that he is incapable of realizing and making rational decisions with respect to his financial responsibilities; and "disability" means that the debtor is so physically impaired as to be unable, after reasonable effort, to participate in an in person, telephone, or Internet briefing required under paragraph (1).

5. Mark Orner, a licensed psychologist, who has seen Jarrell five times from November 27, 2006, to January 6, 2007, has diagnosed Jarrell with bipolar disorder, schizophrenia, and clinical depression. He has concluded that Jarrell "is severely impaired to the point where he is unable to make rational decisions regarding his financial responsibilities and . . . doesn't have the mental ability to realize his decisions are irresponsible. [His] mental disorder is a long term, long duration disorder."

6. Despite his mental illness, Jarrell, according to Dr. Orner, can identify his income and specific assets and debts but does not understand how the assets and income relate to debts and vice versa.

7. Jarrell is not presently taking any medication for his mental illness.

8. Jarrell has filed a lawsuit in Texas in which he has sued a judge, a state court district clerk, and counsel for Huntington National Bank.

9. Huntington National Bank sued Jarrell in state court in Taylor County, Texas. Jarrell removed the case to federal court, but it was remanded back to the state court. Jarrell attempted another removal to federal court and was sanctioned by the federal court for doing so.

10. Huntington National Bank obtained a summary judgment in the Taylor County District Court. Jarrell failed to attend a post-judgment deposition that was scheduled on October 15, 2006. Upon Huntington National Bank's motion, Jarrell was ordered by the state district court to attend the deposition on November 9, 2006. Jarrell ultimately refused to attend the November 9 setting, as well. Jarrell then filed the present bankruptcy case.

11. Jarrell and his wife have lived in Abilene, Texas, for three years. They have four children, ages eight, six, four, and two. The eight year old is blind and has Asperger's disease;

the six year old has cerebral palsy and autism; the four year old has "dwarfism," epilepsy, and autism; the two year old has autism and other "developmental disorders." Jarrell's wife has progressive Crohn's disease and epilepsy; she cannot drive because of her ailments.

12. Jarrell is not employed. His only source of income at present is Social Security disability for himself and for his children. In addition, he receives some help from charitable and nonprofit organizations.

12. Jarrell was first diagnosed with mental problems while he was in high school. He has been hospitalized multiple times for his condition and has attempted suicide.

13. Jarrell had a prior marriage that ended in divorce after two years. He owes child support from his prior marriage.

14. Jarrell and his previous wife lived in Florida. While in Florida, Jarrell invested in real estate, which was unsuccessful. His prior bankruptcy filings and the numerous lawsuits he filed in Florida relate to failed real estate investments and problems making required child support payments. Jarrell has been homeless, and he has been arrested for unpaid child support.

15. Jarrell testified that he filed the present bankruptcy case because he thought that Huntington National Bank would take the Social Security checks and was concerned that he would lose his house.

## Discussion

Two matters were consolidated for hearing: (1) the debtor's request for a permanent exemption from credit counseling; and (2) Huntington National Bank's motion that this chapter 7 case be dismissed with prejudice. Huntington National Bank submits that Jarrell's case should be dismissed under section 707(b)(1) of the Bankruptcy Code, contending that the filing is not

made in good faith and is an abuse of the provisions of the Bankruptcy Code. Huntington National Bank states that Jarrell is a "vexatious litigator" and that his bankruptcy filing is yet another example of his attempt to "abuse the litigation process." Finally, Huntington National Bank asserts that Jarrell does not qualify as a debtor because of his failure to obtain credit counseling. As Jarrell's current monthly income is less than the applicable state median for a household of six individuals, it can be argued, as Jarrell has, that Huntington National Bank is not a proper party to raise the issue of dismissal under section 707(b)(1). 11 U.S.C. § 707(b)(6).[2] Regardless, the Court, in light of Jarrell's history and present circumstance, considers dismissal under section 707(b)(1) on the grounds asserted by Huntington National Bank.

### Failure to Obtain Pre-Filing Briefing/Waiver

The Court first considers whether dismissal is mandated by Jarrell's failure to obtain credit counseling required under section 109(h)(1) of the Bankruptcy Code.[3] Jarrell has requested an absolute exemption from credit counseling. Section 109(h)(4) of the Bankruptcy Code provides that the pre-filing briefing is not required if the court determines that the debtor is unable to complete the requirements of the briefing because of an "incapacity" or "disability." Jarrell's request states he has both an incapacity and a disability. Although he has raised the issue of a disability, disability is defined as a *physical* impairment that prevents a debtor from participating in the briefing. Jarrell contends that his mental illness prevents him from understanding what he would be told during a briefing. The question here, therefore, is whether he has the requisite

---

[2]This provision provides that only the judge or United States trustee may file a motion for dismissal under section 707(b) if the debtor's current monthly income is less than the State's median family income. *See* 11 U.S.C. § 707(b)(6).

[3]This provision provides that an individual may not be a debtor under the Bankruptcy Code unless he/she has, during the 180-day period proceeding the date of filing, received a credit counseling briefing.

"incapacity" to justify a waiver. Section 109(h)(4) provides that "incapacity means that the debtor is impaired by reason of mental illness or mental deficiency so that he is incapable of realizing and making rational decisions with respect to his financial responsibilities . . . ." 11 U.S.C. § 109(h)(4). Jarrell has a mental illness. His filing of multiple bankruptcies and over one hundred lawsuits may in and of itself evidence a mental illness. The testimony of Dr. Orner, Jarrell's psychologist, is the only evidence before the Court that directly addresses the question of whether Jarrell's mental illness renders him incapable of realizing and making rational decisions regarding his financial responsibilities. Dr. Orner explained that while Jarrell can identify specific assets or debts, he does not understand, and cannot reasonably be expected to make decisions that require him to understand, the relationship between the two. The Court is satisfied that Jarrell has the requisite incapacity to justify a waiver of the pre-filing briefing.

**Abuse under Section 707(b)**

Jarrell's petition states that his debts are primarily consumer debts. A review of his schedules confirms this representation. The Court therefore considers whether, under section 707(b) of the Bankruptcy Code, allowing Jarrell to proceed in this chapter 7 case would constitute an abuse of the provisions of the Bankruptcy Code. Abuse is not presumed as no question has been raised concerning whether Jarrell satisfies or not the means test set forth at section 707(b)(2). The Court must then look to section 707(b)(3), which states as follows:

> In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in subparagraph (A)(I) of such paragraph does not arise or is rebutted, the court shall consider –
>
> (A) whether the debtor filed the petition in bad faith; or
> (B) the totality of the circumstances . . . of the debtor's financial situation demonstrates abuse.

11 U.S.C. 707(b)(3). While this provision states that dismissal is mandated if a finding of either bad faith or the totality of the circumstances demonstrates abuse, the Court considers whether the totality of the circumstances indicates bad faith or otherwise dictates a finding of abuse. Jarrell has filed at least ten prior bankruptcy cases; he has initiated over one hundred lawsuits. He has engaged in abusive and dilatory litigation tactics in his dispute with Huntington National Bank. His conduct certainly raises the specter of bad faith. The sheer number of prior bankruptcy filings and lawsuits cannot be justified. Jarrell can be labeled a "serial filer."[4]

But the Court considers the totality of the circumstances in deciding if this case is filed in bad faith or is otherwise abusive of the provisions of the Bankruptcy Code. First, Jarrell testified that he filed this case because he feared that he would lose his home or that Huntington National Bank would take his disability payments. He also filed to avoid further post-judgment discovery by Huntington National Bank. His explanation is credible. In short, he filed to stop Huntington National Bank and to obtain some relief from collection efforts being lodged or threatened against him. This is a legitimate reason to file bankruptcy. The question, then, is whether the prior bankruptcy filings, when considered in the context of the present case, reveals bad faith. There is no evidence, however, that the present filing bears any relation to the prior filings. Huntington National Bank does not contend that it was a creditor and thereby affected by any of the prior cases. There is no evidence that Jarrell is prohibited from filing the present case. To the extent the term "serial filer" denotes that Jarrell is abusing the bankruptcy process, he certainly qualified

---

[4] Serial filer has been defined as "an individual who files multiple bankruptcy cases in a relatively short period of time, without ever receiving a discharge through completion of a plan of rehabilitation or otherwise successfully finishing a case." *In re Letitia Hughes*, No. 06-32726-SGJ-7, 2007 WL 87665, at *1 (Bankr. N.D. Tex. Jan. 9, 2007) (Stacey G. C. Jernigan presiding).

as a serial filer with the multiple filings he made in Florida. From Huntington National Bank's motion, it appears that the prior bankruptcy filings were all made in 2004 or before. *See* Huntington National Bank's motion ¶ 6. Jarrell, while in Florida, was found to be responsible for over one hundred lawsuits which have been characterized as "frivolous in nature." *See* Ex. A. Jarrell apparently initiated all these actions *pro se*. As egregious as his conduct has been, the Court finds no connection between the prior bad acts and the present filing. The irony of a serial filer is that both the filing *and* the dismissal of the case is part of the *modus operandi*: the case is filed and ultimately dismissed for technical violations, for example, a failure to file Schedules, pay filing fee, or the like. The dismissal is typically without prejudice thereby allowing a repeat filing to halt the most immediate action of a creditor. And the process starts over. A bankruptcy court, in responding to a serial filer, the type that is "gaming the system," and, in so doing, is making a mockery of the provisions of the Bankruptcy Code, can dismiss the case with prejudice to prevent a subsequent filing for a stated period of time. The court can also issue sanctions sufficient to deter such conduct. *See In re Letitia Hughes*, No. 06-32726-SGJ-7, 2007 WL 87665 (Bankr. N.D. Tex. Jan. 9, 2007) (Stacey G. C. Jernigan presiding).

    In this case, Jarrell has filed his Schedules and has, as of the date of the hearing on Huntington National Bank's motion, complied with the requirements of the Code. His case is under administration. Though he filed *pro se*, he has retained competent counsel, counsel that has for many years practiced before this Court representing both creditors and debtors in a professional manner. The Court is satisfied that, unlike Jarrell's prior filings, Jarrell is receiving sound advice and guidance.

In evaluating whether the prosecution of a bankruptcy case is an abuse of the very system it invokes, the Court looks to what best serves the interests of the constituent parties before the Court. In this regard, allowing the present case to proceed does not harm or prejudice the creditors, including Huntington National Bank. Indeed, creditors should be relieved that Jarrell is under the supervision and jurisdiction of the bankruptcy court and does not have an unfettered right to dismiss his case if he determines that proceeding with the bankruptcy is not what he wants. Jarrell's nonexempt assets, if he has any, will be liquidated for the benefit of his creditors and he cannot resort to yet another bankruptcy filing to halt that process. Huntington National Bank may be disappointed that allowing Jarrell's case to proceed will prevent it from winning the proverbial race to the courthouse in its collection efforts, but the Court cannot summon any sympathy for such position. The Bankruptcy Code attempts to effect an equitable distribution among creditors. The Court is doubtful that Jarrell, given his condition, will ever achieve significant wealth thereby creating a source of recovery for Huntington National Bank. Of course, if Huntington National Bank believes, for whatever reason, that it holds a nondischargeable debt or one that should be declared nondischargeable, it has the right to assert its rights in the bankruptcy court. If successful and Jarrell is otherwise discharged, Huntington National Bank can then pursue a recovery against Jarrell without competition from the other creditors holding discharged debts. The Court believes that creditors are best served by it allowing Jarrell to continue, indeed requiring that he continue, with his bankruptcy case.

Jarrell has more problems than should be visited upon any human being. His wife and four children suffer from various illnesses; Jarrell is very sick. While no one deserves a free pass by simply offering up the excuse that he does not know what he is doing, Jarrell's situation is

unique. This bankruptcy will not begin to address the majority of the many problems that Jarrell has, but it may provide token relief from some of his debts. Under the circumstances, the Court believes the continued prosecution of this bankruptcy case serves Jarrell's interests.

Finally, the Court considers whether the best interests of the Court and the judicial process is served by allowing Jarrell's case to proceed. Jarrell's past conduct has certainly burdened both the federal and state courts in which he has appeared and thus the public at large. The Court can only fathom the wasted time, effort, and expense imposed upon court clerks and other court personnel. Jarrell's past conduct makes a compelling argument that allowing this bankruptcy case to proceed damages the Court and does not best serve the Court's interests. However, the Court is also mindful that the best interests of the Court is ultimately the best interests of those whom the Court serves. The Court concludes it will take Jarrell with his many problems and issues, at least one last time, and allow him the opportunity to pursue some modicum of relief.

The Court raises one last issue *sua sponte*. As recited in the facts, Jarrell obtained a waiver of the filing fee upon his *pro se* representation that he had a monthly income of $525 a month. His Schedule I reflects, however, an average monthly income of $3,861. The Court will set aside its prior order waiving the filing fee and directs that Jarrell pay the filing fee in equal installments due the 25th day of March, April, May, and June of 2007.

### End of Memorandum Opinion ###